IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BOBBY G. SMITH, JR., AIS 283200, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:20-CV-667-ECM-SMD |
| | ) |
| WARDEN BUTLER, et al., | ) |
| | ) |
| Defendants. | ) |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.   INTRODUCTION

Plaintiff Bobby Smith, Jr., filed this *pro se* 42 U.S.C. § 1983 action. *See* Docs. 1, 2.

Thereafter, Plaintiff filed an Amended Complaint, which became the operative pleading in

this action. Doc. 13. The Amended Complaint names as defendants Ventress Correctional

Facility Warden Reosha Butler, Easterling Correctional Facility Warden John Crow,

former Alabama Department of Corrections ("ADOC") Commissioner Jefferson Dunn[1],

and Assistant ADOC Commissioner Cheryl Price. Doc. 13 at 1–3. It alleges that, in June

2020, inmates who tested positive for COVID-19 were transferred from Easterling to

Ventress, where Plaintiff is and was confined. *Id*. at 9. Plaintiff does not allege that he

personally contracted COVID-19. Rather, he claims the transfer of infected inmates to

Ventress was unreasonable, exposed him to a serious risk of harm, and made Ventress

---

[1] John Hamm has replaced Jefferson Dunn as the Commissioner of the Alabama Department of Corrections. Thus, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Hamm is automatically substituted as defendant in his official capacity. Former ADOC Commissioner Jefferson Dunn remains a defendant in his individual capacity. The Clerk is DIRECTED to update the docket sheet and caption accordingly.

1

unsafe. *Id*. at 7–9. Plaintiff also alleges that Ventress is overcrowded making it difficult to engage in social distancing, that Ventress inmates are forced to live and sleep in close and unsanitary quarters, and that Ventress inmates sit shoulder to shoulder with other inmates in the dining hall making Ventress "an incubator" for the spread of COVID-19. *Id.* at 4–5. Based on these allegations, Plaintiff purports to bring an Eighth Amendment deliberate indifference claim against Defendants. For relief, he seeks monetary damages and injunctive relief. *Id.* at 15–18."[2]

On March 3, 2021, the court issued an Order directing Defendants to file a Special Report addressing Plaintiff's claims (Doc. 16), which Defendants did on June 1, 2021. Doc. 33. In their Special Report, Defendants argue that Plaintiff fails to state a deliberate indifference claim against them and provide evidentiary materials in support, and they also assert immunity in their official and individual capacities. *Id.* After reviewing the Special Report the court issued an Order on June 4, 2021, requiring Plaintiff to respond to the report with affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 34. This Order specifically cautioned  that the "[c]ourt may at any time [after expiration of the time for Plaintiff to file a response] and without further notice to the parties (1) treat the [Special] Report, … and all supporting evidentiary materials as a motion for summary judgment, and (2) after considering any response …, rule on the

---

[2] Plaintiff also sought a preliminary injunction prohibiting Defendants from transporting or transferring to Ventress any inmates, correctional staff, or medical staff who tested positive for COVID-19 or "any other highly contagious virus/disease." Doc. 13 at 15. However, Plaintiff's motion for a preliminary injunction was denied prior to this Recommendation. *See* Docs. 35, 36.

dispositive motion in accordance with the law."[3] *Id.* at 3. Pursuant to the June 4, 2021, Order, the undersigned now treats Defendants' Special Report as a motion for summary judgment and concludes the motion is due to be granted.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party … . [A fact] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has satisfied that burden, the nonmovant is required to cite portions of the record showing a genuine dispute of material fact.  *Id.* at 324. The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish a genuine dispute of material fact, the nonmovant must produce evidence such that a reasonable trier of fact could return a verdict in its favor.  *See Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

---

[3] Plaintiff filed a belated response (Doc. 40) to Defendants' opposition to his request for preliminary injunctive relief. He filed no other response.

In determining whether a genuine dispute of material fact exists, the court must view all the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Summary judgment also should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.   RELEVANT FACTS[4]

In June 2020, inmates who tested positive for COVID-19 were transferred from Easterling to Ventress, where Plaintiff is and was confined. Doc. 13 at 7–9. Plaintiff alleges the transfer of inmates infected with COVID-19 to Ventress was unreasonable and made it an unsafe place, and that Defendants' actions in this regard amounted to deliberate indifference to his health and safety. *Id.* at 3–13. Plaintiff also alleges that Defendants failed to implement measures recommended by state and federal health officials to stop the spread of COVID-19 at Ventress. *Id.* Finally, Plaintiff contends that overcrowded conditions at

---

[4] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

Ventress make it difficult to engage in social distancing, force inmates to live and sleep in close quarters which are unsanitary and unsafe, and result in inmates sitting shoulder to shoulder in the dining hall making Ventress "an incubator" for the spread of COVID-19. *Id.* at 4–5. Plaintiff does not allege that he contracted COVID-19.

Defendants concede that six inmates who tested positive for COVID-19 were transferred from Easterling to Ventress in or around July 2020. Doc. 33-4 at 2. However, these inmates were housed under medical quarantine in a specific, designated location that facilitated medical isolation; the inmates' movements were restricted to prevent them from coming into contact with other inmates; and prison officials have taken, and continue to take, extensive actions to protect inmates and staff from the spread of COVID-19 at Ventress and throughout all ADOC facilities. *Id.* at 2–4. Plaintiff's medical records indicate that he had not received a COVID-19 test because he never exhibited any signs or symptoms of COVID-19. *Id.* at 2; *see also* Docs. 33-6, 33-7.

## IV.   DISCUSSION

### A.   The Prison Litigation Reform Act bars Plaintiff's request for damages under the Eighth Amendment.

Plaintiff seeks over $900,000 in monetary damages. Doc. 13 at 17–18; *see also* Docs. 45, 46. However, the Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring an action "for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e). This physical injury requirement "has long been recognized as applying to claims under the Eighth Amendment." *See, e.g.*, *Brooks v. Warden*, 800 F.3d 1295, 1298 (11th Cir. 2015) (holding

that because the plaintiff had not alleged physical injury, under the PLRA he could not recover compensatory or punitive damages but remanded for nominal damages claim).

Here, Plaintiff has neither alleged nor provided any evidence that he contracted COVID-19 or suffered any sort of physical injury stemming from the events described in the Amended Complaint. *See generally* Doc. 7. Thus, the PLRA bars his claims for compensatory damages.[5] *See, e.g.*, *Wilson v. Dallas Cnty. Jail*, 2022 WL 1176749, at \*2 (N.D. Tex. Mar. 16, 2022) (holding that a prisoner's generalized fear of catching COVID is not sufficient to meet the physical injury requirement of the PLRA and thus damages were barred); *Johnson v. Upton*, 2021 WL 1705221, at \*2 (S.D. Ga. April 6, 2021) (finding that prisoner had not alleged a physical injury by stating that he lived in fear of contracting COVID-19 and thus the PLRA barred compensatory and punitive damages).

### B.    Plaintiff has not shown that he is entitled to prospective injunctive relief.

To obtain prospective injunctive relief, a plaintiff must demonstrate that a credible threat exists that he will again be subjected to the specific injury for which relief is sought. This requires a plaintiff to make a reasonable showing that there is a "sufficient likelihood" that he will again be injured without relief from the Court. *See City of L.A. v. Lyons*, 461 U.S. 95, 99 (1983); *Indep. Party of Fla. v. Sec'y of State of Fla.*, 967 F.3d 1277, 1280 (11th Cir. 2020) ("When a plaintiff seeks prospective relief to prevent a future injury, [he] must establish that the threatened injury is certainly impending."). Past exposure to harm is largely irrelevant when analyzing claims for declaratory or injunctive relief that are

---

[5] Plaintiff does not seek nominal or punitive damages.

predicated upon threats of future harm. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). Indeed, "because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Wooden v. Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1283 (11th Cir. 2001).

Plaintiff requested preliminary injunctive relief in this matter, which the Court denied. To the extent Plaintiff's amended complaint can be construed to request prospective injunctive relief, Plaintiff's requests should be denied. Simply put, Plaintiff's requests for prospective injunctive relief are conjectural and hypothetical based on past exposure to speculative harm from the transfer of COVID-19 infected prisoners to Ventress. For example, Plaintiff asks that the Court, inter alia, order prison officials "to not transport or transfer to Ventress . . . any inmate or staff members . . . that has tested positive for COVID-19 or for any other highly contagious virus/disease." Doc. 13 p. 15. He also asks that everyone be tested for COVID-19 and that prison officials be required to do a "walk through" of prison areas and provide a report pertaining to the measurements taken to prevent the spread of COVID-19. *Id*. The national emergency related to COVID-19 ended on April 10, 2023. *United States v. Martinez Encinias*, -- F. Supp. 3d --, 2023 WL 4578452, at *8 n.7 (D. N. Mex. July 18, 2023). Plaintiff's requests for injunctive relief do not show that there is any likelihood of a recurring injury and the Court finds no reason to create one. As such, to the extend Plaintiff is requesting prospective injunctive relief, the request is denied.

## V.     CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that:

1.      Defendants' Motion for Summary Judgment (Doc. 33) be GRANTED.

2.      Judgment be ENTERED in favor of Defendants.

3.      This case be DISMISSED with prejudice.

It is **ORDERED** that any objections to this Recommendation must be filed by August 31, 2023. An objecting party must identify the specific portion of the factual findings or legal conclusions to which the objection is made and must describe in detail the basis for the objection. Frivolous, conclusive, or general objections will not be considered. This Recommendation if not a final order and, therefore, it not appealable.

Failure to file a written objection to this Recommendation shall bar a party from a de novo determination by the District Court of any factual findings or legal conclusions contained herein and shall waive the right of the party to challenge on appeal any subsequent order that is based on factual findings and legal conclusions accepted or adopted by *see Resol. Tr. Corp., v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 17th day of August, 2023.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE